Good morning. May it please the Court. My name is John Millar and I represent the appellant, Seth Wallack. The matters before the Court on this appeal are not especially complex. They deal with whether or not tribal issues of fact under Rule 56 existed or, as this Court reviews the matter de novo, exist on the record before this Court on essentially one primary issue. Drilled down to the essence, the question is asked or is asked here is, was there sufficient evidence in the record to show that as of late 2009, when these co-owners, co-directors, co-officers of DVM Insight, Inc. had breached or especially Wallack, excuse me, Wright and Walters had breached fiduciary duties owed to Mr. Dr. Wallack, primarily usurping the trademark DVM Insight spelled out, which was at the time only a licensed use by DVM Insight, Inc., the license coming from Mr. Wallack's wholly owned other company, San Diego Veterinary Managing, SDVI, in the papers. Well, but I guess I want to have you address for me first, there was a mutual release provision of the December 2009 stock repurchase agreement, which expressly waives Wallack's right to bring any claim against Wright and Walter except for breach of that agreement. Wallack received the price for his shares agreed to by the parties. And so it appears that Wright and Wallack fulfilled their obligation under the agreement. Why isn't that the end of the matter? The mutual release is voidable, as Judge Curiel in the district court recognized, if there is a fraud or a breach of fiduciary duty that existed prior to or in the formation of the agreement that contained the mutual release. And you alleged 11 such acts. And he went through every one of them and said either there's no proof, for instance, that there was a secret employment agreement, or as far as moving the business back into the private home of, I think it was Mr. Wright, Mr. Wallack agreed with that. Now, what we have to do is to determine whether the record shows there's any triable issue of fact as to those claims that Judge Curiel found there wasn't any triable issue of fact. You didn't make it out. Correct, Your Honor. So why don't you give me your best and most pungent criticism of Judge Curiel? All of the other issues that were addressed by Judge Curiel don't address the trademark issue. And the trademark issue is the core issue because as things played out with the IDEX purchase of assets, the trademark really was the primary value in DVM Insight. You say the trademark issue. You're really immersed in this case. Explain to us why the trademark issue is so central to the fraud in procurement of the general release. Yes, Your Honor. As set forth in the record, the trademark is central to the issue because in the veterinary industry, DVM Insight is a well-known name or brand in the industry. In other words, it's really the foundational issue why they're paying $3.2 million after 2009. In candor, I'm not going to say it's worth the whole $3.2 million, but a significant portion. They wouldn't have made the deal without getting the trademark. Well What was the misrepresentation with respect to the trademark? Well, misrepresentation and or concealment of their intent to usurp that license to once Mr. Wallach sold his shares back under the repurchase agreement, which didn't include the trademark as part of that transaction, they intended at that point in time that they had owned and whether it was to IDEX or to some other company, they would sell the assets, including that trademark. But your client knew that at the time because there was something for a million bucks at that point, right? There was discussion of there were negotiations for a million bucks, which had been turned down because they said that's not enough. So your client knew that. Your client didn't know it was going to go for $3.2. But so why isn't this it? But he knew that they weren't taking a million and they knew they were talking. If you look at 3.8 of the repurchase agreement, it sets forth what are the assets or what the deal was going to include for Mr. Wallach to sell back his 40 percent interest. But so he wants to get out. But somehow he still wants part of the 3.2. Of course he does, because they sold a trademark and intended at the time of that sale to sell the trademark, which was outside of that agreement. So your position is that Wallach never sold the trademark. Correct. SDVI is not a party to that underlying agreement. The fiduciary duties that are owed are not owed to SDVI, and there's a point or there are a couple of points in the respondent's brief about whether they're standing and whether decisions or orders that happened after this actual summary judgment ruling are relevant and should be considered by this court. Well, shouldn't it have said in the agreement that I'm retaining the trademark? If you go through the deposition testimony of Mr. Christian, who was DVM Insights' own lawyer, you would think that would have occurred in the underlying case. He said it never was addressed. He anticipated that it would. However, the USPTO is very clear, the Lanham Act is very clear, that if you have a registered ownership of a trademark, you need a writing. You need a writing to transfer that trademark, and it never happened. Well, so is your position that Mr. Wallach now owns the trademark, and these people paid $3.2 million and they're out? Actually, the other part of the litigation, as against IDEX, dealt with the trademark issue, and that has settled. So they actually paid a large sum of money to purchase that trademark, and indeed, right after that. And who did they pay the money to to purchase the trademark? Excuse me, Your Honor? To whom did they pay the money to purchase the trademark? Wallach and SDVI, as a separate part of this action. After that summary judgment in September of a couple of years ago, after IDEX's motion for summary judgment, that they owned the trademark, which Judge Curiel denied the case settled before it went to trial on the trademark issues. So your client has benefited from that settlement and recouped the amount of the value of the trademark that he agrees that he recouped, correct? He ---- So what is he complaining about these people for? Because he recouped part of it, but he is complaining against Dr. Wright and Mr. Walters for having breached fiduciary duties related to the trademark and all other issues that led to it being ruled out. What particular fiduciary duty did the two other men breach as to Wallach? The primary one by usurping the corporate opportunity that was only a license at the time from SDVI to use the name DVM Insight in their business dealings even after the ---- But as I understood what you're saying is that Wright and the other partner didn't own the trademark. It was owned by Wallach. And so how could they take a corporate opportunity to sell something they didn't own? That's a good question, how they took that corporate opportunity. But if you look at the asset purchase agreement, they certainly did, because in the list of assets, I believe it's ---- And there had to be a subsequent settlement to pay your client Wallach because he said you didn't buy the trademark. Well, this was all concealed from Mr. and Judge Curiel in his last ruling in the case. And I set forth the ruling at page 12 of our opening brief. Very clearly, Judge Curiel was not presented with all these trademark issues on this summary. And there's a long history of that. We had three years of motion practice on the motions to dismiss. But we didn't know until about two months before this motion was filed, because we hadn't had discovery or anything happen in the case other than those motions, that it was actually Dr. Wright and Walters who had usurped a corporate opportunity and sold it to IDEX. What we were presented with for those first three years was IDEX attempting ---- How can they usurp a corporate opportunity when you're stating that the corporation doesn't have the trademark? The corporation had a ---- And Judge Curiel's ruling on the IDEX motion for summary judgment leaves the case down below whether or not there was an implied license to use the DVM Insight name. That is a corporate opportunity that was usurped, and the intent to do so had actually occurred prior to the stock repurchase agreement having been entered into, which is the breach of fiduciary duty that should void the mutual releases. That had all occurred earlier. So there was indeed a corporate opportunity that they had, in quotes, stolen using Judge Curiel's words in the order. That had actually occurred. But the crux of this appeal is that Judge Curiel made an additional finding that we believe was over and above the findings he needed to make the rule on the summary judgment. He infused and was anchored on the issues regarding prior discussions that occurred with IDEX about a possible sale. Well, really those are issues regarding damages, not liability, because at the time of the stock repurchase agreement, all that needed to be proven was that there was a breach of fiduciary duty that was concealed and that had occurred prior to the stock repurchase agreement, requiring also that Wallach prove that there was an intent to, at some point in the future, sell the business to IDEX is really irrelevant. It could have been sold to anybody. Well, how long a time period are you going to ask for? This is 21 months after he sold his shares, wasn't it, roughly? Essentially, yes. Would it be 10 years? Would you still have the same argument? As long as the implied license was in place. And also, I'm not sure, I did not see a ruling on a motion for a request for judicial notice that we filed, but the third document attached to that request for judicial notice, which was unopposed, by the way, is a filing with the USPTO that showed that SDVI was still considering and using the trademark in its business, and there's an incontestability pending any type of writing under the Lanham Act transferring that trademark. So there was use, continued to be used by SDVI, and, you know, that's a public record that I would request the court take judicial notice of. Do you want to save any time for a rebuttal? I will save a minute, Your Honor. Okay. Just to conclude, what Appellant is asking of this, of you all, is reverse and remand. Really what this case should go back to the district court for is for a determination by a jury on the issues that Judge Curiel ultimately found in the IDEX motion for summary judgment, i.e., that there is an implied license that existed all the way through until the IDEX purchase, and also taking potentially a lifeline from a prior argument. There certainly can be a motion to amend if, taking the respondent's brief at face value, that there is no claim for trademark infringement as against Wright and Walters. That can be amended, and we were so rushed right after discovery, even while still taking depositions of IDEX, when this motion came down. I don't want to take all the time. We only have 30 seconds left, so if you want to save any time, you better sit. Okay. I'll submit you. Thank you. Good morning. Good morning. May it please the Court, Mattias Stevens on behalf of Matt Wright and Stephen Walters. Judge Curiel got this exactly right, and we're hoping that this Court won't throw that common sense or the law out the window in favor of these tortured arguments. It's a frivolous lawsuit that Judge Curiel was incredibly careful and painstakingly walked through to un-muddy the waters. And that trademark issue is a non-issue for multiple reasons, including the fact that you have been ---- Could you help me, Mr. Stevens? I'm a little bit muddled myself on what the claim of the trademark issue is. Put it as best you could if you were Mr. Millar. What is the trademark issue that he was talking about? Your Honor, frankly, candidly, I have difficulty putting it together because it just doesn't make sense. Well, try. I will give it my best, Your Honor. And the only context is in a breach of fiduciary duty. Then what he has to do is bootstrap a claim that sounds in fraud or a breach of that fiduciary duty. And what he's come up with with no admissible evidence is a claim that they attempted to steal the trademark in the face of having his own lawyer also claiming breach of fiduciary duty in December of 2009 when he signed the release all about that predicate fact. They had, and it was in Wallach's ability to know, they had the facts. It was incumbent on his lawyer to do the due diligence. And come fast forward, 2015, he still doesn't have any facts that support ongoing negotiations or an attempt to steal the trademark. And, oh, by the way, under Article III, he doesn't even have standing to assert the claim because he doesn't own it. SDVI owns it. And that document that you've asked to take judicial notice of says so. There's no injury. And we've had a little bit of talk about what Judge Curiel did subsequent and the settlement subsequent. That wasn't in front of Judge Curiel at the time of this decision. But even if it was, it again robs Wallach of any injury. So now he doesn't have standing, he doesn't have injury. So why are we here? We are here in a fit of anger. Is he moving the needle as to what he's complaining about? Because I saw this case differently when I came in as opposed to when hearing about the settlement. And I'm not sure that we do anything with the settlement because parties can do whatever they want. I mean, if they decide they don't want to come to court, like being in court is kind of an unpleasant experience, they can decide that they don't want to pay their lawyers and they'll pay each other or they'll do whatever they want. I'm not sure there's any legal significance to that. But I sort of came in here thinking that Appellant was complaining about somehow that he wanted a part of the $3.2 million and that he was that was a that was fraudulently misrepresented to him. But I don't remember the talk about the trademark the way that we're hearing it today. Well, and I think your Honor is exactly right that he does want part of that $3.2 million. But that's in the rearview mirror. There is no fiduciary relationship after he's no longer a shareholder. And the only way that he could try to bootstrap that was by making this claim, at least in part, of continuing negotiations and an attempt to steal the trademark. And there's no there there. And Judge Curiel drilled down on that hardcore and got to zero admissible evidence. And to the contrary, the evidence showed that there were no discussions of a sale. And, by the way, IDEX initiated that in 2011. So you've got 18 months of time that is now in the rearview mirror. And this is a sophisticated party with legal representation who was already making allegations of breach of fiduciary duty in all and sundry matter. At the time that he, with his counsel's advice, elected to settle the claim, all of this could have been on the plate. Well, let me ask you this. DVMI signed a nondisclosure agreement with IDEX that remained open through the date the final deal closed in September of 2011. So why does this not create at least a tribal issue of fact as to whether Wright and Walter were in continuous negotiations with IDEX during that period? They were negotiating Wallach's exit package. Excellent question, Your Honor, and there's at least two reasons. Number one is the corporate papers get laid around all the time, right? So they execute an NDA. There's no obligation on the part of either IDEX or Wright or Walters to take that off the table. It's just sitting there. But the record is also crystal clear. Walters knew, or excuse me, Wallach knew about that sale, and it was rejected. So everybody had all the same bank of information that was available at that time, and he participated in that. So that NDA comes off the table for at least those two reasons. But the fast forward again, you no longer at the point that the parties, IDEX, Walters, Wright, and DVMI decide to use that NDA, you're not going to reinvent the wheel. It's sitting there. They've already signed off on it. You can say they're obligated. It's not an indicia of continued negotiations. And everybody from IDEX confirmed there were no continuing negotiations. So all that is is speculative. We've got an NDA from an old deal that he knew was dead, and it doesn't revive anything by way of fact suggesting that there's continuing negotiations. And he doesn't have any admissible evidence to suggest that there was. In fact, the only admissible evidence, as I've said, is IDEX approached DVMI, Wright, and Walters in 2011 about potentially inking a deal. The other thing is it's all complete speculation. So when you have a release, the law in California and the State law, the substantive law on which the Court must rely, is clear that courts don't involve themselves in either the wisdom or the folly of that contract. And the Court shouldn't do that here. Well, he's – I heard Appellant saying something about if he gets to go back down there, he's going to ask for leave to amend. And the horse is already out of the barn. So whatever claims that he might conceivably try to bootstrap, the statute of limitations is already gone on those. And Judge Curiel obviously wasn't presented with any of that. This was that summary judgment as well, correct? That's correct, Your Honor. Not at the pleading stage. Correct. So you've got two or three motions to dismiss and then the summary judgment. And this case was pending starting in 2011. And fast forward to 2017, there's not a statute that's going to save any of the claims. So we would urge the Court to affirm Judge Curiel's very thorough opinion and put an end to this long, dark tunnel. When you release claims, claims are released. And the parties are entitled to have faith and confidence that what they got was a release. And the only time that a court will interfere with that is in face of fraud. And here we have zero, no admissible evidence. It didn't happen. Your Honor, we would encourage the Court, please affirm the lower court and put an end to this frivolous litigation. Thank you. Does the Court have any questions? We do not appear to have any additional questions. Thank you. Thank you. Thank you very briefly. Judge Curiel has already laid to rest that this case was not frivolous. I invite you to read his ruling on the motion for attorney's fees that was the last ruling. Indeed. Judge Curiel dealt exactly with your trademark issue at page 66, page 20 of his opinion. And he found that plaintiff does not raise an issue of trademark violation as to the stock repurchase agreement in December 2009 as to defendants or DVMI, but only alleges it as to IDEX as part of the asset purchase agreement and later conduct by ADEX. Why was he wrong? And that, Your Honor, is because we didn't know until about a month or two prior to this motion for summary judgment being filed that it was actually defraud of ---- Did you make a motion to continue under 56D? I attempted, Your Honor. Did you make the motion? I did not make the motion. I was actually in the Philippines getting married, and all parties knew I was at the time, and it was hard for me actually to get a two-week extension to even respond to the motion. I believe that certainly in the record, all the way even through in the motions to dismiss, that the trademark issue had been raised. The trademark issue had been raised. Well, I think what Judge Bail was saying, you said he didn't deal with it, but he pointed you to somewhere in the opinion where he specifically addressed it. But even ---- that is kind of contrary to what the rest of the opinion discusses because Judge ---- You need to wrap up because we don't have additional questions, and you're already a minute and a half over. Judge Curiel went through the whole issue of requiring my client to prove that there was an intent to steal the trademark and sell it to IDEX in the future. So while he says we didn't have a trademark claim, he did address the issue because he knew the issue was a central key to the case. That central key to the case ended up being largely what the summary judgment in IDEX was about and certainly what the motion for attorney's fees was about later. This case should be remanded to allow the trademark issues, as they relate to a breach of fiduciary duty for usurping the trademark opportunity, it should be remanded and allowed the rest of that case to go forward to a jury under a breach of fiduciary duty cause of action, not a trademark infringement claim unless we're allowed to amend that claim in. And now that we know it was the fraud of Wright and Walters that caused this whole thing to happen. All right, I gave you a chance to wrap up, and now you're two and a half minutes over. So thank you for your comments. This matter will stand submitted.
judges: Kelly, Callahan, Bea